[No. 38940. Department Two. October 5, 1967.]
WIGHTMAN A. ROACH, *Respondent,* v. DOROTHY S. ROACH, *Appellant.**

*Murray, Scott, McGavick & Graves,* by *Robert L. Beale,* for appellant.

*Johnson & Dixon,* by *Brooks K. Johnson,* for respondent.

OTT J.†—Wightman A. Roach and Dorothy S. Roach were married in Portland, Oregon, on December 23, 1946. At the time of their marriage Mr. Roach had served in the United States Air Force continuously for 20 years. Dorothy S. Roach, at the time of the marriage, had $4,000 in cash and owned two homes in England. Sometime prior to her marriage Mrs. Roach sold two other residential properties. There were no children born to the union.·

As an officer in the United States Air Force, Mr. Roach was stationed at various places in the United States. They did not live on the military reservations but purchased an equity in residential property in the name of Mrs. Roach,

*Reported in 432 P.2d 579.

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

and upon subsequent transfer, would sell the equity and likewise purchase another home in their new location.

On March 31, 1957, after 30 years of service, Mr. Roach retired with the rank of major and was paid his monthly military pension. After retirement they resided approximately 8 years in England. Mr. Roach sold insurance. He contacted principally service personnel in England and other foreign countries.

In March 1964, Mr. Roach moved to Tacoma and obtained an apartment. Mrs. Roach followed in June and returned to England in August. A letter postmarked January 28, 1965, was received by Mr. Roach in which Mrs. Roach indicated, *inter alia,* that because of her allergies she could not live in Tacoma and would not live in Portland. She was also critical of Mr. Roach's failure to answer her letters and sundry other marital disagreements.

On March 19, 1965, Mr. Roach commenced this action for divorce against Mrs. Roach alleging cruel treatment and personal indignities rendering his life burdensome. Mrs. Roach's answer denied that respondent had any legal grounds for divorce and alleged that she was physically disabled, could not be gainfully employed, had no resources with which to sustain herself and would need $300 per month for support and maintenance in the event the divorce was granted.

The trial court granted Mr. Roach a divorce upon the grounds of cruel treatment, made a division of the assets of the parties, awarded Dorothy S. Roach alimony in the sum of $150 per month for a period of 4 years and allowed $650 attorney's fees.

From the entry of the decree Dorothy S. Roach has appealed.

Appellant first contends that the record does not sustain the trial court's finding of cruelty and that the court erred in granting a decree of divorce to respondent. Without portraying the details of the evidence from which the trial court found cruel treatment, we are convinced after read-

ing the record that it sustains the trial court's finding No. 17 which states in part:

> That during the married life of the parties, without cause or justification, the Defendant has been guilty of cruel treatment toward the Plaintiff that has made his homelife burdensome . . . .

The court's second finding of grounds for divorce is set out in finding of fact No. 6, quoted in part as follows:

> [T]hat the Defendant left Tacoma of her own volition, to return to England, in August, 1964; and that when she left Tacoma the Defendant intended to return to England as her permanent residence.

RCW 26.08.020 sets out the statutory grounds for divorce. Subsection 4 states "[a]bandonment for one year." The abandonment, which the trial court found, commenced in August 1964. On March 19, 1965, this action for divorce was commenced. At that time the statutory period of 1 year had not transpired. We agree with appellant that finding of fact No. 6, as a separate ground for divorce, is not sustained by the record. The finding of abandonment for the period mentioned was proper only insofar as it tends to support the trial court's findings of cruelty.

Appellant next asserts that the trial court erred in failing to make a just and equitable division of the property belonging to the parties at the time of the divorce. The principal contention is the failure of the court to take into consideration the value of respondent's retirement pension earned while serving in the United States Air Force. The gross amount of the pension is $496 per month conditioned upon certain federal statutory contingencies. The net amount is approximately $428.

In *Morris v. Morris*, 69 Wn.2d 506, 508, 419 P.2d 129 (1966), in characterizing a pension this court said:

> The appellant wife's principal contention on appeal is that the trial court erred in characterizing the military pension as a gratuity from the government (and, as such, the husband's separate property) rather than an asset of the marital community. We are inclined to agree with the appellant as to characterization or legal classification re-

specting the pension. In *Loomis v. Loomis,* 47 Wn.2d 468, 479, 288 P.2d 235 (1955), we noted in passing that a military pension "is not in the nature of 'future earnings,' but is an asset acquired during coverture."

After characterizing the pension as an asset acquired during coverture the court did not treat it as a property asset, but awarded a specific payment of $100 per month from the military pension which was "all subject to further order of the court, or until such time as she remarries or becomes employed and earning $250 per month, or more." *Morris v. Morris, supra,* at 511.

 Federal military pensions are subject to certain contingencies set out by federal statute. As such it is not a fixed asset but is an emolument or economic advantage of office. *McLean v. United States,* 226 U.S. 374, 57 L. Ed. 260, 33 Sup. Ct. 122 (1912). It is an income resource which should be considered by the court in fixing the amount of the alimony award.

The trial court found in finding of fact No. 20 the value of the pension after deductions to be in the net sum of $428.17, and in his judgment and decree awarded the wife $150 per month for a period of 4 years beginning March 1966. The trial court in fixing this amount had the pension in mind as shown by finding of fact No. 20.

We are in accord with the court's determination of the amount of alimony for the first 4 years. We are of the opinion that after the 4-year period the respondent should pay to the appellant a "specific amount" of the military pension in the sum of $70 per month, all subject to further order of the court or until appellant remarries or becomes employed and earning $150 per month or more. *Morris v. Morris, supra,* at 511.

Appellant further asserts that the trial court erred in allowing her a disproportionate share of the remaining property.

The trial court awarded to the appellant the several bank accounts and cash which she had under her control in the sum of $1,082.02. The court awarded to the respondent the

property in his possession and control in the estimated value of $8,760. The trial court made the following findings of fact:

## IX

That the Defendant [appellant] owned four houses in England which she sold shortly before her marriage to the Plaintiff [respondent]; that the Defendant brought with her to the United States at the time of her marriage $4000.00 from the proceeds of such sales, which was used by the parties and became co-mingled with their community funds during succeeding years [19]; and that no less than $20,000.00 and possibly as much as $30,000.00 remained of the proceeds from the sale of these houses, for which the Defendant has given no good account.

## X

That at the time the Plaintiff left England to return to the United States, the parties had an accumulation of household goods and furnishings acquired during their married life; and that no evidence was offered by the Defendant concerning the nature and value of such property, its disposition or present status, or the amount of proceeds therefrom if sold.

## XVI

That the Court feels that the Defendant has not been fully candid in her accounting of her financial affairs, and that there are many gaps and omissions in her testimony and evidence.

■■ As shown above, the court, in the exercise of its discretion, did not believe that the appellant had candidly accounted for the sums of money which were under her control, and under cross-examination she could not remember what disposition had been made of sizeable sums of money except to say that it had been expended during coverture. The court has a right to believe or disbelieve the testimony of either party. *Dickson v. Hausman,* 68 Wn.2d 368, 413 P.2d 378 (1966). It is the province of the trial court to determine the facts. *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 330 P.2d 1068 (1958). The trial court disbelieved certain portions of the testimony of

the appellant. In *Garrett v. Garrett,* 67 Wn.2d 646, 648, 409 P.2d 470 (1965), we said:

> Although the division of community property need not be exact, it must be just and equitable. Only a manifest abuse of discretion justifies this court in setting the division aside. *Robuck v. Robuck,* 62 Wn.2d 917, 920, 385 P.2d 50 (1963).

We find no manifest abuse of discretion in the trial court's failure to believe, in all respects, the testimony of the appellant. We find no merit in the appellant's contention that the property award was not fair, just and equitable under the facts of this case.

Finally, the appellant requests that this court award her additional attorney's fees for the prosecution of this appeal. The appellant, having substantially prevailed, will recover costs and will be allowed the sum of $500 attorney's fees.

The cause is remanded with instructions to modify the decree of divorce in accordance with the views hereinabove expressed.

HILL, DONWORTH, HAMILTON, and NEILL, JJ., concur.

December 1, 1967. Petition for rehearing denied.