[Civ. No. 38431. Second Dist., Div. Five. Sept. 17, 1971.]

ROBERT G. TAYLOR, JR., Plaintiff and Respondent, v.
GENERAL TELEPHONE COMPANY OF CALIFORNIA,
Defendant and Appellant.

**COUNSEL**

Newlin, Tackabury & Johnston, George W. Tackabury and Robert L. Fairman for Defendant and Appellant.

Baird, Baird & Wulfsberg and Woodrow W. Baird for Plaintiff and Respondent.

**OPINION**

**REPPY, J.**—This case is before us on certified transfer from the Appellate Department of the Los Angeles County Superior Court pursuant to rule 63, California Rules of Court, for determination of questions regarding employee rights under private pension plans which call for no cash contribution by the employee.

Plaintiff was discharged from his employment by defendant in 1967 at the age of 54 after having been in defendant's employ for 31 years. During this period, defendant maintained a pension plan (the Plan)[1] for employees funded exclusively by employer contributions. Section 4(1) of the Plan provided in substance that (a) employees must retire at age 65 and, if they have 15 or more years of employment, "become eligible to pensions upon such retirement"; (b) male employees at age 60 who have been employed 20 or more years "shall if they so request, or may at the discretion of the Committee and with the approval of the President . . . , be retired . . . and granted a pension"; (c) male employees at age 55 who have been employed 25 or more years "may at the discretion of the

---

[1]We refer to the Plan as it existed in 1967. Certain changes had been made during plaintiff's term of employment, but none relevant to the issues before us.

Committee and with the approval of the President . . . , be retired . . . and granted a pension"; and (d) male employees under the age of 55 who have been employed 30 or more years "may, at the discretion of the Committee and with the approval of the President . . . , be retired . . . and granted a pension." Section 5 provided in part that the Plan does not give an employee a right to be retained in the service of the company or to any pension after discharge, unless the right to the pension had accrued prior to discharge, and that pensions may be terminated in cases of conduct prejudicial to the interests of the company.

Defendant issued and circulated among its employees several brochures concerning the Plan which plaintiff received and examined. All except one appear to be copies of the Plan as it existed and state that an employee under 55 years of age with 30 years of service could be retired and granted a pension only at the discretion of the Committee and with the approval of the President. The last brochure, issued in 1964, differed markedly in form and content from the earlier ones. It did not purport to set forth in full the provisions of the Plan and contained an introduction which so advised the reader and informed him of the availability of the plan for his review. Page 2 of the 12-page booklet set forth classes of employees eligible for a pension, including employees under 55 with 30 years service. On page 11 it is stated that "All pensions are approved by the Committee," and that "The Company reserves the right to suspend or terminate any pension or pension rights in case of conduct prejudicial to the interests of the Company."

In October of 1964, plaintiff, as a division manager for defendant, learned of the large unpaid balance of the accounts of one Tom Shaheen and his corporations (hereinafter referred to as the Shaheen account). Rather than closing the account, plaintiff first kept it in open, and later in temporary disconnect status and attempted to collect it. In October of 1966, plaintiff learned that Shaheen had filed a petition in bankruptcy showing debts greatly in excess of assets. He then instructed his personnel to destroy the itemized monthly detailed billings pertaining to the Shaheen account, to break that account up into a number of accounts, and to write the accounts off, one after another, over a period of time. The purpose of this procedure was to keep the bad debt ratio in his division within the division objective set by the company. The destruction of records was to plaintiff's knowledge in violation of company rules.[2] The

[2]A booklet entitled "Our Code of Business Ethics" provided in part:
*"Integrity of Reports and Records*
"Various accurate and reliable records are necessary for the company to meet its legal and financial obligations, and to manage the affairs of business. Integrity in the reporting and preparation of such records is necessary at all times, to safeguard our

setting up of fictitious accounts to conceal the state of collectibility of another account was in violation of company practice.

In November of 1967, defendant learned of plaintiff's actions and terminated his employment advising him that no pension benefits would be paid. Plaintiff brought this action for monthly pension payments. The trial court awarded plaintiff 28/31sts of the monthly payments to which he would have been entitled had he been retired at the date of discharge, on the theory that his dereliction of duty commenced after 28 years of service and that a vested right to proportional pension payments had accrued prior to discharge. Both parties appealed to the Appellate Division of the Superior Court of Los Angeles County. That division reversed, ordering judgment for defendant. It certified transfer to this court for review, designating as important questions of law to be settled (rule 63(e)) (1) "How far do pension plans which call for no cash contribution by the employee vest rights in the employee?"[3] and (2) "Are private pension plans under the rules governing 'contracts of adhesion'?"

■ A pension plan offered by the employer and impliedly accepted by the employee by remaining in employment constitutes a contract between them, whether the plan is a public or private one, and whether or not the employee is to contribute funds to the pension. (*Hunter* v. *Sparling,* 87 Cal.App.2d 711, 722-723 [197 P.2d 807].) ■ Under provisions such as subdivision (a) and subdivision (b) of section 4(1) of the Plan before us, an employee is entitled to retire with pension when he reaches the designated age and has the specified years of service, and his subsequent discharge for cause ordinarily does not preclude him from receiving a pension where there is no provision in the involved Plan to that effect. (*Pearson* v. *County of Los Angeles,* 49 Cal.2d 523, 543-544 [319 P.2d 624]; *Wendland* v. *City of Alameda,* 46 Cal.2d 786, 787-788 [298 P.2d 863]; *Skaggs* v. *City of Los Angeles,* 43 Cal.2d 497, 503-504 [275 P.2d 9]; see Annot., 76 A.L.R.2d 566.) Plaintiff, however, is attempting to recover under subdivision (d) of section 4(1) of the Plan. ■ Under provisions

services, our reputation, and our financial and legal standing with the public and the communities we serve. ¶ The company's accounts and records are prepared and maintained in accordance with the Uniform System of Accounts prescribed by appropriate regulatory bodies which specify the time period for which various types of records are to be retained. Unauthorized destruction of records is a violation of law. ¶ Reports and records, including those involving time spent or material used, vouchers, bills, payroll and service, and all other necessary data must be factual and accurate. ¶ Any information as to location of equipment or circuits which could be used to the detriment of the company or to the nation's defense must not be disclosed to unauthorized persons."

[3]A more appropriate question for this case would have been, "To what extent do discretionary pension plans vest rights in the employee?"

such as subdivisions (c) and (d), an employee who attains the designated age with the specified years of service may retire with pension only at the discretion of the employer, and his discharge for misconduct before a pension is actually granted terminates his pension rights. (See *Bos* v. *United States Rubber Co.*, 100 Cal.App.2d 565 [224 P.2d 386]; *MacIntyre* v. *Retirement Board of S. F.*, 42 Cal.App.2d 734 [109 P.2d 962] and *Skaggs* v. *City of Los Angeles, supra* [distinguishing *MacIntyre, supra*]; *Weber* v. *Bell Telephone Co.*, 415 Pa. 292 [203 A.2d 554]; *Twiss* v. *Lincoln Telephone & Telegraph Co.*, 136 Neb. 788 [287 N.W. 620]; Annot. 42 A.L.R.2d 461, § 8, pp. 475-482.)

■ Plaintiff had six years to go to qualify for a pension as a matter of right. It does not appear that the trial court was attempting to give plaintiff a pro rata share of this type of pension. The ratio adopted by the trial court rules this out. Even if it had this concept in mind and had utilized a pertinent ratio, it would not have reached a proper solution.

Reliance by the trial court and plaintiff on the statements in *Kern* v. *City of Long Beach*, 29 Cal.2d 848, at page 852 [179 P.2d 799], that "the right to a pension vests upon acceptance of employment," and that "[s]ince a pension right is 'an integral portion of contemplated compensation' [citation], it cannot be destroyed once it has vested, without impairing a contractual obligation" (p. 853) was misplaced for either claim. That case does not justify the trial court's position. It involved the repeal of a pension plan a month before an employee would have been entitled to a pension under the plan. The concept that the employee "has actually earned some pension rights as soon as he has performed substantial services for his employer," (p. 855) was a basis for holding that a right to a pension vests before pension payments are due, but it is not authority for the proposition that an employee discharged for misconduct before he is entitled to retire has an indefeasible right to a portion or pro rata share of the pension to which he would have been entitled had his employment continued until he reached the age and completed the years of service specified in the pension plan for a pension mandatory as to the company. That the pension rights of an employee during the period before pension payments are due or accrue are contingent and defeasible was made clear by statements of the *Kern* court (1) that "[t]he fact that a pension right is vested will not, of course, prevent its loss upon the occurrence of a condition subsequent such as lawful termination of employment before completion of the period of service designated in the pension plan" (p. 853) and (2) that "payment of [pension] benefits is deferred, and is subject to the condition that the employee continue to serve for the period required

by the statute," (p. 855) and by its reference to the "contingent liability" of the employer (p. 855).

Defendant's position is strengthened by section 5 of defendant's pension plan, which provides that establishment of the Plan shall not be construed as giving to any employee a right to be retained in the service of defendant or any right or claim to a pension after discharge, unless the right to such pension has accrued prior to such discharge.

This provision and the existing case law suggest that all conditions for receiving a pension have not been met if employment is lawfully terminated before the employer has exercised its discretion to grant retirement and a pension and before defendant is in a category of employees entitled to a pension as a matter of right and that therefore the employee has no claim to a pension. However, we are limiting our holding to the situation where the discharge results because of misconduct of the employee.[4]

The destruction of records and the setting up of false accounts in knowing violation of company rules and practices, justified plaintiff's dismissal and the denial of his pension.

The contract of adhesion aspect of this case stems from plaintiff's contention that the 1964 brochure resulted in sufficient ambiguity about his rights under the Plan to justify reliance on the doctrine that in standardized contracts which are made by parties of unequal bargaining strength, clauses of limitation of liability which are unclear, unexpected, inconspicuous, or unconscionable will not be enforced; he cites *Steven* v. *Fidelity & Casualty Co.*, 58 Cal.2d 862 [27 Cal.Rptr. 172, 377 P.2d 284]; *Hunter* v. *Sparling, supra,* 87 ·Cal.App.2d 711; Witkin, Summary of California Law (1969 Supp.) § 224, p. 107 et seq. We are convinced, however, that under the particular circumstances of this case, plaintiff could not reasonably have been misled by the 1964 brochure. From the date of his employment in 1936 until 1964, plaintiff had received brochures stating that retirement with pension for one not yet 55 years

---

[4]It is not implausible that there could arise a situation where an employee in the discretionary pension category is lawfully discharged for reasons reflecting the needs of the company (rather than any misconduct on his part) and where an arbitrary denial of pension could constitute an abuse of discretion. Difficulties with this view arise not only because of the apparent position of the courts that discharge terminates any rights unless all conditions have already been met, but also because of the failure of the courts to indicate what standards, if any, should be applied to the exercise of the discretion. Some companies with retirement provisions like the one in question might grant early retirement with pension as a reward for extraordinary service; others might grant it as a matter of course; others might grant or deny it in a completely arbitrary manner. We need not resolve these problems.

of age with 30 years' service was discretionary. The 1964 booklet, which was clearly not a full presentation of the Plan, stated the "eligibility" of such a person for a pension, not his entitlement to one as a matter of right. More important, on page 11 of the 12-page booklet, in the same size print used throughout, it is clearly stated that any pension rights may be terminated in case of conduct prejudicial to the interests of the company.[5] Thus, even if plaintiff had accepted the booklet as a complete statement of the plan, he would have been on sufficient notice that misconduct such as his could jeopardize his pension.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 24, 1971.

---

[5]Whereas the brochure refers to termination of "pension rights," section 5 of the Plan refers to termination of "pensions," perhaps referring to pensions which had been put in operation and not to a mere right to a pension to be paid in the future. Since plaintiff's claim, however, is based on reliance on the brochure, he could not have been prejudiced by this discrepancy.