[No. 327-2. Division Two. November 18, 1971.]

CLIFFORD F. DeREVERE, *Appellant,* v. JEAN W. DeREVERE, *Respondent.*

George W. Christnacht (of Troup, Christnacht & Herron), for appellant.

*Thomas G. Krilich* (of *Lee, Krilich, Lowry & Thompson*), for respondent.

PETRIE, C.J.—A prior opinion of this court in this case, filed July 28, 1971, had been reported in 5 Wn. App. 446, 488 P.2d 763 (1971). We granted respondent's petition for rehearing, and now replace our prior opinion with the following. The primary issue presented by this appeal from a decree of divorce is whether or not the husband's interest in a company retirement plan constituted "property" divisible as such by the court; and, if it did, whether or not the trial court abused its discretion in the distribution thereof.

The detailed specifications of the retirement plan have not been placed in the record. Accordingly, we made no definitive determination of the rights, in general, of parties to such plan. However, sufficient information does appear in the record to dispose of the issue presented by this appeal.

At the time of trial and entry of the decree, Mr. De-Revere was 58 years of age and had been employed by the American Telephone and Telegraph Company continuously for more than 40 years. His employer had established a noncontributory retirement plan under which, assuming his continuing employment with this company, he will have the option of retiring at or after age 60, but will be required to retire at age 65. The annual amount of his pension is determined by multiplying his years of service by 1 per cent of the average of his five highest annual salaries. It was agreed that at the time of the divorce, 1 per cent of the average of his five highest annual salaries multiplied by his years of service produced a figure of $518 per month. If he should quit work or be fired before age 60, apparently, he would receive no pension. If he should become disabled, however, he would be entitled to a pension. Should he pass away before age 60, his widow would receive a benefit under the plan, but this latter provision, however, is terminated upon divorce. Mr. DeRevere testified, and such testimony is not controverted, that his inter-

est in the retirement plan has neither cash value nor cash surrender value. When asked if it had any market value, he replied, merely: "It is noncontributory."

The trial court considered Mr. DeRevere's potential retirement benefits as "property", and awarded him all right, title and interest in the retirement benefits. He has appealed, assigning error to the court's finding of fact awarding Mrs. DeRevere the sum of $400 per month for a period of 5 years, effective May 10, 1970, in lieu of her community interest in the retirement plan, and "as further property division." In other words, Mrs. DeRevere was awarded an additional $24,000 in property, payable over a 5-year period.

We start with the proposition that it is the duty of the trial court, in an action for divorce, to dispose, with finality, of *all* property of the parties which is brought to its attention. *Shaffer v. Shaffer*, 43 Wn.2d 629, 262 P.2d 763 (1953). Further, it is now firmly established in this jurisdiction that retirement provisions are in the nature of deferred compensation; and, as such, the employee has a *vested right in the system* which cannot be altered to his detriment, whether such system be a public plan, *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956); a private, employee contributory plan negotiated through the collective bargaining process, *Dorward v. ILWU-PMA Pension Plan*, 75 Wn.2d 478, 452 P.2d 258 (1969); or a voluntary, noncontributory (employer financed) plan, *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 468 P.2d 666 (1970).

Although the employee has a vested right in the system or plan from the date of its inception, he has no enforceable monetary right unless and until the contractual terms for *payment* of accrued benefits, at present or at some time in the future, have been met. *Jacoby v. Grays Harbor Chair & Mfg. Co., supra.* In the case at bar, the record indicates that Mr. DeRevere's interest in the retirement plan will not ripen into a vested right to payment of specifically accrued benefits unless and until he continues in employment with the company and he reaches age 60

(or until he is determined to be disabled pursuant to the terms of the contract). Upon the happening of this critical event, his interest becomes matured to the point that he then has a *fully vested*[1] interest in the future payment of those benefits. Until that critical event occurs, his interest, although vested in the system, amounts to something less than a vested right to payment. Our concern is whether or not such interest constitutes "property" divisible by the court.

In discussing the precise problem with which we are confronted, two noted authorities summarize the situation as follows:

> Problems sometimes arise where the spouse was employed while single and then later married. Many cases have held that the sums later received are considered both community property in part and separate property in part in the proportion to the amounts of wages or salary while single and while married that went into the securing of the right or benefit. It has otherwise been expressed as in proportion to the number of years worked while single and while married. It has sometimes been argued that the employee actually had no contract or property right in the fund involved and that the right cannot accrue until the happening of an event upon which payment is contingent. Thus, upon division of property upon divorce, is there a right or interest to be considered? The answer has been that there is a valuable right which has been purchased with the community funds or community labor and the right or interest is community property and is to be valued by what went into earning it.

(Footnotes omitted.) W. deFuniak & M. Vaughn, Principles of Community Property § 68, at 149 (2d ed. 1971).

In *Pittman v. Pittman*, 64 Wn.2d 735, 393 P.2d 957 (1964), the court determined that funds standing to the husband's credit on the books of the state retirement board, even though payment of benefits were not payable until the

---

[1] The term "fully vested" is perhaps a misnomer because in many plans the employee may continue to increase the amount, and sometimes the character, of accrued benefits by continuing to remain employed.

happening of some event in the future, constituted property divisible by the divorce court. However, the funds therein spoken of appear to be[2] the "employees' savings fund", the accumulated contributions of the employee into the retirement system, which, upon termination of membership in the system, is returnable to the employee, and which, upon commencement of receipt of benefits under the system, is used to purchase an annuity supplementing the other benefits payable. RCW 41.40.100. In this sense, then, the employee's accumulated contributions are similar to an ordinary savings account, subject, however, to a limited method of withdrawal. In the case at bar, of course, there are no employee contributions and no fund which could be equated with a savings account. So, *also*, in *Neeley v. Lockton*, 63 Wn.2d 929, 389 P.2d 909 (1964), both factions of the court considered the fund established by the employee's accumulated contributions to be property.

Reference to property rights developed through insurance policies provides some additional helpful analogies. In this state, life insurance proceeds, payable at some time in the future, are property and not mere expectancies or choses in action. *Occidental Life Ins. Co. v. Powers,* 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937). A community which pays premiums on a policy of life insurance, even though no cash value is developed thereby, acquires a property right in the insurance proceeds. *Small v. Bartyzel,* 27 Wn.2d 176, 177 P.2d 391 (1947). Similarly, a community which pays a portion of the premiums (the husband's employer paying the other portion) on a group life, disability and medical insurance policy, even though no cash value is developed thereby, acquires a property right characterized as an inchoate interest in the insurance proceeds properly distributable in a divorce action. *Chase v. Chase,* 74 Wn.2d 253, 444 P.2d 145 (1968).

As we have already noted, there is no distinction between a retirement plan financed through employee salary deduction and one financed exclusively by the employer. If

[2]Examination of the briefs confirms the appearance.

the employee is married, the plan is financed and rights are being purchased either by community funds or community labor. Neither do we see any reason to distinguish between a plan which has been formalized through purchase of an insurance policy paying certain disability or pension benefits and one in which the employer undertakes to establish a program through some self-insurance plan. Property rights inure to the employee covered to the same extent in either case. Hence, in the case at bar, even though it might appear that Mr. DeRevere's interest in the company retirement plan had not yet fully vested, such rights as he—and the community composed of himself and wife—did have at the time of the divorce were properly divisible *as property* by the court.

■ We turn, therefore, to a consideration as to whether or not the trial court abused its discretion as to the division of this particular asset. It is always a difficult task for the trial court to follow the mandate of the statute, RCW 26.08.110, to make the property division just and equitable, having regard for the statutory factors to be taken into consideration. It is manifestly more difficult when one of those items of property has not yet come into being, and, when once it does come into existence, has an unpredictable life. One method of attempting to resolve the difficulties is to develop a percentage division of the monthly amount of the pension or retirement benefit which will remain constant during the period of time in which the pension is payable. *See Edwards v. Edwards,* 74 Wn.2d 286, 444 P.2d 703 (1968). Another method is to award the entire pension to one of the parties, generally the party whose work effort generated the pension, and to award to the other, in lieu of participation in the pension, a sum certain, which may, or may not, be payable over a specified time period.

In the case at bar, the trial court chose this latter method of division. We need not attempt to develop precise valuations as to the theoretical interest of each of the parties to this retirement plan. It is a simple matter to conjure up hypothetical situations which may or may not develop, any

one of which would result in a gross injustice to either party when this method of distributing an inchoate interest in any given pension plan is utilized. While we might not, in the first instance, have chosen either this method of distribution or the specific distribution made by the trial court, we cannot declare that there has been, under all the circumstances, a manifest abuse of discretion by the trial court. *Peterson v. Peterson,* 3 Wn. App. 374, 475 P.2d 576 (1970).

Judgment is affirmed.

PEARSON and ARMSTRONG, JJ., concur.