15 Cal.3d 838 (1976)
544 P.2d 561
126 Cal. Rptr. 633
In re the Marriage of GLORIA LOUCILLE and ROBERT WILLIAM BROWN.
GLORIA LOUCILLE BROWN, Appellant,
v.
ROBERT WILLIAM BROWN, Respondent.
Docket No. L.A. 30463.
Supreme Court of California. In Bank.
January 16, 1976.
*841 COUNSEL
Sidney W. Jones for Appellant.
Gertrude D. Chern as Amicus Curiae on behalf of Appellant.
Robert G. Beloud and Jay G. Vickers for Respondent.
Frederick S. Brown as Amicus Curiae on behalf of Respondent.
OPINION
TOBRINER, J.
Since French v. French (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366], California courts have held that nonvested pension rights are not property, but a mere expectancy, and thus not a community asset subject to division upon dissolution of a marriage. Two years ago we granted a hearing in In re Marriage of Wilson (1974) 10 Cal.3d 851 [112 Cal. Rptr. 405, 519 P.2d 165], to reconsider "the current viability of the rule of French v. French" (10 Cal.3d at p. 853), but upon examination of the record in Wilson we discovered that the French issue had been waived by the nonemployee spouse. Properly raised in the present case by appellant Gloria Brown, the issue of division of nonvested pension rights upon dissolution of a marriage again confronts this court.
(1a) Upon reconsideration of this issue, we have concluded that French v. French should be overruled and that the subsequent decisions which rely on that precedent should be disapproved. As we shall explain, the French rule cannot stand because nonvested pension rights are not an expectancy but a contingent interest in property; furthermore, the French rule compels an inequitable division of rights acquired through community *842 effort. Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding.
Before we turn to the facts of this appeal we must devote a few words to terminology. Some decisions that discuss pension rights, but do not involve division of marital property, describe a pension right as "vested" if the employer cannot unilaterally repudiate that right without terminating the employment relationship. (See Strumsky v. San Diego County Employees Retirement Assn. (1974) 11 Cal.3d 28, 45 [112 Cal. Rptr. 805, 520 P.2d 29]; Kern v. City of Long Beach (1947) 29 Cal.2d 848, 855 [179 P.2d 799]; Dryden v. Board of Pension Commrs. (1936) 6 Cal.2d 575, 579 [59 P.2d 104].) As we explain later, we believe that these decisions correctly define the point at which a pension right becomes a property interest. In divorce and dissolution cases following French v. French, however, the term "vested" has acquired a special meaning; it refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement.[1] We shall use the term "vested" in this latter sense as defining a pension right which survives the discharge or voluntary termination of the employee.
As so defined, a vested pension right must be distinguished from a "matured" or unconditional right to immediate payment. Depending upon the provisions of the retirement program, an employee's right may vest after a term of service even though it does not mature until he reaches retirement age and elects to retire. Such vested but immature rights are frequently subject to the condition, among others, that the employee survive until retirement.[2]
The issue in the present case concerns the nonvested pension rights of respondent Robert Brown. General Telephone Company, Robert's employer, maintains a noncontributory pension plan in which the rights of the employees depend upon their accumulation of "points," based upon a combination of the years of service and the age of the employee. Under this plan, an employee who is discharged before he accumulates 78 points forfeits his rights; an employee with 78 points can opt for early *843 retirement at a lower pension, or continue to work until age 63 and retire at an increased pension.
Gloria and Robert Brown married on July 29, 1950. When they separated in November of 1973, Robert had accumulated 72 points under the pension plan, a substantial portion of which is attributable to his work during the period when the parties were married and living together.[3] If he continues to work for General Telephone, Robert will accumulate 78 points on November 30, 1976. If he retires then, he will receive a monthly pension of $310.94; if he continues his employment until normal retirement age his pension will be $485 a month.
Relying on the French rule, the trial court held that since Robert had not yet acquired a "vested" right to the retirement pension, the value of his pension rights did not become community property subject to division by the court. It divided the remaining property, awarding Gloria the larger share but directing her to pay $1,742 to Robert to equalize the value received by each spouse. The court also awarded Gloria alimony of $75 per month. Gloria appeals from the portion of the interlocutory judgment that declares that Robert's pension rights are not community property and thus not subject to division by the court.[4]
As we have stated, the fundamental theoretical error which led to the inequitable division of marital property in the present case stems from the seminal decision of French v. French, supra, 17 Cal.2d 775. Mrs. French claimed a community interest in the prospective retirement pay of her husband, an enlisted man in the Fleet Reserve. The court noted that "under the applicable statutes the [husband] will not be entitled to such pay until he completes a service of fourteen years in the Fleet Reserve and complies with all of the requirements of that service." (P. 778.) It concluded that "At the present time, his right to retirement pay is *844 an expectancy which is not subject to division as community property." (Ibid.)
In 1962 the Court of Appeal in Williamson v. Williamson, 203 Cal. App.2d 8 [21 Cal. Rptr. 164], explained the French rule, asserting that "To the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as community property." (203 Cal. App.2d at p. 11.)
Subsequent cases, however, have limited the sweep of French, holding that a vested pension is community property even though it has not matured (In re Marriage of Martin (1975) 50 Cal. App.3d 581, 584 [123 Cal. Rptr. 634]; In re Marriage of Ward (1975) 50 Cal. App.3d 150 [123 Cal. Rptr. 234]; In re Marriage of Bruegl (1975) 47 Cal. App.3d 201, 205, fn. 4 [120 Cal. Rptr. 597]; Bensing v. Bensing, supra, 25 Cal. App.3d 889, 893), or is subject to conditions within the employee's control (Waite v. Waite (1972) 6 Cal.3d 461, 472 [99 Cal. Rptr. 325, 492 P.2d 13]; In re Marriage of Peterson (1974) 41 Cal. App.3d 642, 650-651 [115 Cal. Rptr. 184]). But although we have frequently reiterated the French rule in dictum (see, e.g., In re Marriage of Jones (1975) 13 Cal.3d 457, 461 [119 Cal. Rptr. 108, 531 P.2d 420]; In re Marriage of Fithian (1974) 10 Cal.3d 592, 596 [111 Cal. Rptr. 369, 517 P.2d 449]; Phillipson v. Board of Administration (1970) 3 Cal.3d 32, 40-41 [89 Cal. Rptr. 61, 473 P.2d 765]; cf. Smith v. Lewis (1975) 13 Cal.3d 349, 355 [118 Cal. Rptr. 621, 530 P.2d 589]), we have not previously had occasion to reexamine the merits of that rule.
Throughout our decisions we have always recognized that the community owns all pension rights attributable to employment during the marriage. (See Phillipson v. Board of Administration, supra, 3 Cal.3d 32, 39; French v. French, supra, 17 Cal.2d 775, 778; In re Marriage of Ward, supra, 50 Cal. App.3d 150, 153.) The French rule, however, rests on the theory that nonvested pension rights may be community, but that they are not property; classified as mere expectancies, such rights are not assets subject to division on dissolution of the marriage.
We have concluded, however, that the French court's characterization of nonvested pension rights as expectancies errs.[5] The term expectancy *845 describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent (Civ. Code, § 700; see Estate of Perkins (1943) 21 Cal.2d 561, 569 [134 P.2d 231]), or of a beneficiary designated by a living insured who has a right to change the beneficiary (see Morrison v. The Mutual L. Ins. of N.Y. (1940) 15 Cal.2d 579, 583 [103 P.2d 963]; Mayfield v. Fidelity & Casualty Co. (1936) 16 Cal. App.2d 611, 619 [61 P.2d 83]).[6] As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence.
Although some jurisdictions classify retirement pensions as gratuities, it has long been settled that under California law such benefits "do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee." (In re Marriage of Fithian, supra, 10 Cal.3d 592, 596.) Since pension benefits represent a form of deferred compensation for services rendered (In re Marriage of Jones, supra, 13 Cal.3d 457, 461), the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property (see Civ. Code, § 953; Everts v. Will S. Fawcett Co. (1937) 24 Cal. App.2d 213, 215 [74 P.2d 815]), we held in Dryden v. Board of Pension Commrs., supra, 6 Cal.2d 575, 579, that an employee acquires a property right to pension benefits when he enters upon the performance of his employment contract.
Although Dryden involved an employee who possessed vested pension rights, the issue of nonvested rights came before us in Kern v. City of Long Beach, supra, 29 Cal.2d 848. There a city employee contended that the city's repeal of a pension plan unconstitutionally impaired the obligation of contract. The city defended on the ground that the employee's pension rights had not vested at the time of the abrogation of the plan.
Ruling in favor of the employee, we stated in Kern that: "[T]here is little reason to make a distinction between the periods before and after *846 the pension payments are due. It is true that an employee does not earn the right to a full pension until he has completed the prescribed period of service, but he has actually earned some pension rights as soon as he has performed substantial services for his employer. [Citations omitted.] He ... has then earned certain pension benefits, the payment of which is to be made at a future date.... [T]he mere fact that performance is in whole or in part dependent upon certain contingencies does not prevent a contract from arising, and the employing governmental body may not deny or impair the contingent liability any more than it can refuse to make the salary payments which are immediately due. Clearly, it cannot do so after all the contingencies have happened, and in our opinion it cannot do so at any time after a contractual duty to make salary payments has arisen, since a part of the compensation which the employee has at that time earned consists of his pension rights." (29 Cal.2d at p. 855.)
Since we based our holding in Kern upon the constitutional prohibition against impairment of contracts, a prohibition applicable only to public entities, the private employer in Hunter v. Sparling (1948) 87 Cal. App.2d 711 [197 P.2d 807] contended that it could repudiate an employee's nonvested pension rights without liability. Rejecting that contention, the Court of Appeal cited the language from Kern quoted above and concluded that once the employee performed services in reliance upon the promised pension, he could enforce his right to a pension either under traditional contract principles of offer, acceptance and consideration or under the doctrine of promissory estoppel. (87 Cal. App.2d at p. 725.) In subsequent years the courts have repeatedly reaffirmed that a nonvested pension right is nonetheless a contractual right, and thus a property right.[7]
Although, as we have pointed out, supra, courts have previously refused to allocate this right in a nonvested pension between the spouses as community property on the ground that such pension is contingent upon continued employment,[8] we reject this theory. In other situations *847 when community funds or effort are expended to acquire a conditional right to future income, the courts do not hesitate to treat that right as a community asset.[9] For example, in Waters v. Waters (1946) 75 Cal. App.2d 265 [170 P.2d 494], the attorney husband had a contingent interest in a suit pending on appeal at the time of the divorce; the court held that his fee, when and if collected, would be a community asset. Indeed in the several recent pension cases the courts have asserted that vested but immature pensions are community assets although such pensions are commonly subject to the condition that the employee survive until retirement. (See Smith v. Lewis, supra, 13 Cal.3d 349, 355, fn. 4; In re Marriage of Martin, supra, 50 Cal. App.3d 581; In re Marriage of Bruegl, supra, 47 Cal. App.3d 201, 205.)
We conclude that French v. French and subsequent cases erred in characterizing nonvested pension rights as expectancies and in denying the trial courts the authority to divide such rights as community property. This mischaracterization of pension rights has, and unless overturned, will continue to result in inequitable division of community assets. Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. (See Thiede, op. cit., supra, 9 U.S.F.L.Rev. 635.) (2) A division of community property which awards one spouse the entire value of this asset, without any offsetting award to the other spouse, does not represent that equal division of community property contemplated by Civil Code section 4800.
The present case illustrates the point. Robert's pension rights, a valuable asset built up by 24 years of community effort, under the French rule would escape division by the court as a community asset solely because dissolution occurred two years before the vesting date. If, as is entirely likely, Robert continues to work for General Telephone Company for the additional two years needed to acquire a vested right, he will then enjoy his separate property an annuity created predominantly through community effort. This "potentially whimsical result," as the Court of Appeal described a similar division of community property in In re Marriage of Peterson, supra, 41 Cal. App.3d 642, 651, cannot be reconciled with the fundamental principle that property attributable to *848 community earnings must be divided equally when the community is dissolved.
Respondent does not deny that if nonvested pension rights are property, the French rule results in an inequitable division of that property. He maintains, however, that any inequity can be redressed by an award of alimony to the nonemployee spouse. Alimony, however, lies within the discretion of the trial court; the spouse "should not be dependent on the discretion of the court ... to provide her with the equivalent of what should be hers as a matter of absolute right." (In re Marriage of Peterson, supra, 41 Cal. App.3d 642, 651.)
Respondent and amicus further suggest that a decision repudiating the French rule would both impose severe practical burdens upon the courts and restrict the employee's freedom to change his place or terms of employment. We shall examine these contentions and point out why they do not justify a continued refusal by the courts to divide nonvested pension rights as a community asset.
(3) In dividing nonvested pension rights as community property the court must take account of the possibility that death or termination of employment may destroy those rights before they mature. In some cases the trial court may be able to evaluate this risk in determining the present value of those rights. (See DeRevere v. DeRevere, supra, 491 P.2d 249; Thiede, op. cit., supra, 9 U.S.F.L.Rev. 635, 654.) But if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an appropriate portion of each pension payment as it is paid.[10] This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest. (See Cohan & Fink, Is the Non-Employee Community Interest in Qualified Deferred Compensation a Hidden Asset or a Latent Liability? (1974) 1 Com. Prop.J. 7, 13; Note, op. cit., supra, 24 Hastings L.J. 347, 356-357.)
*849 As respondent points out, an award of future pension payments as they fall due will require the court to continue jurisdiction to supervise the payments of pension benefits. Yet this obligation arises whenever the court cannot equitably award all pension rights to one spouse, whether or not such rights are vested; the claim of mere administrative burden surely cannot serve as support for an inequitable substantive rule which distinguishes between vested and nonvested rights. Despite the administrative burden such an award imposes, courts in the past have successfully divided vested pension rights by awarding each spouse a share in future payments. (See In re Marriage of Wilson, supra, 10 Cal.3d 851, 855-856; Bensing v. Bensing, supra, 25 Cal. App.3d 889, 892.) Courts can divide nonvested pension rights in like fashion.
Moreover, the practical consequence of the French rule has been historically that the court must often award alimony to the spouse who, deprived of any share in the nonvested pension rights, lacks resources to purchase the necessities of life. (Article, op. cit., supra, 6 U.C.Davis L.Rev. 26, 32.) Judicial supervision of alimony awards, undertaken in the past, entails far more onerous a burden than supervision of future pension payment.[11]
As to the claim that our present holding will infringe upon the employee's freedom of contract, we note that judicial recognition of the nonemployee spouse's interest in vested pension rights has not limited the employee's freedom to change or terminate his employment, to agree to a modification of the terms of his employment (including retirement benefits), or to elect between alternative retirement programs.[12] We do not conceive that judicial recognition of spousal rights in nonvested *850 pensions will change the law in this respect. The employee retains the right to decide, and by his decision define, the nature of the retirement benefits owned by the community.
Robert finally contends that any decision overruling French v. French, supra, 17 Cal.2d 775 should be given purely prospective effect. Although as we explain our decision cannot be accorded complete retroactivity without upsetting final judgments of long standing, we believe the decision may properly govern any case in which no final judgment dividing the marital property has been rendered.
(4) Although as a general rule "a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation" (County of Los Angeles v. Faus (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680]), we have recognized exceptions to that proposition when considerations of fairness and public policy preclude full retroactivity (see Westbrook v. Mihaly (1970) 2 Cal.3d 765, 800-801 [87 Cal. Rptr. 839, 471 P.2d 487]; Forster Shipbldg. Co. v. County of L.A. (1960) 54 Cal.2d 450, 459 [6 Cal. Rptr. 24, 353 P.2d 736]). In Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 193 [98 Cal. Rptr. 837, 491 P.2d 421], we observed that the resolution of this issue of prospective application turns primarily on two factors: "the extent of the public reliance upon the former rule, ... [and] the ability of litigants to foresee the coming change in the law." In the present case both factors militate against a purely prospective overruling of French v. French. It is unlikely that a layman would rely upon the French rule, or even know of that doctrine; attorneys familiar with the decision in French v. French would also realize from our opinion in Marriage of Wilson, supra, 10 Cal.3d 851 that the French rule was ripe for reconsideration. The unjust distribution of property engendered by the French rule should not be perpetuated by denial of any retrospective effect to our decision.
On the other hand, if we accord complete retroactivity to our decision today we might reopen controversies long settled by final judgment. Undoubtedly in the 35 years since the rendition of French v. French, counsel, relying on that decision, have often failed to list nonvested pension rights as among the community assets of the marriage. In some cases the inability of the nonemployee spouse to assert an interest in nonvested pension rights may have induced the court to award additional alimony. Yet under settled principles of California community property law, "property which is not mentioned in the pleadings as community property is left unadjudicated by decree of divorce, and is *851 subject to future litigation, the parties being tenants in common meanwhile." (In re Marriage of Elkins (1972) 28 Cal. App.3d 899, 903 [105 Cal. Rptr. 59].) Consequently full retroactivity poses the danger that a nonemployee spouse might upset a settled property distribution by a belated assertion of an interest as a tenant in common in the employee's nonvested pension rights.
(5) We conclude that our decision today should not apply retroactively to permit a nonemployee spouse to assert an interest in nonvested pension rights when the property rights of the marriage have already been adjudicated by a decree of dissolution or separation which has become final as to such adjudication,[13] unless the decree expressly reserved jurisdiction to divide such pension rights at a later date (see Civ. Code, § 4800). Our decision will apply retroactively, however, to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights.
(1b) For the foregoing reasons we conclude that the holding of French v. French, supra, 17 Cal.2d 775 that nonvested pension rights cannot constitute community property subject to division upon dissolution of the marriage must be overruled.[14]
In sum, we submit that whatever abstract terminology we impose, the joint effort that composes the community and the respective contributions of the spouses that make up its assets, are the meaningful criteria. The wife's contribution to the community is not one whit less if we declare the husband's pension rights not a contingent asset but a mere *852 "expectancy." Fortunately we can appropriately reflect the realistic situation by recognizing that the husband's pension rights, a contingent interest, whether vested or not vested, comprise a property interest of the community and that the wife may properly share in it.
The judgment of the superior court is reversed and the cause remanded for further proceedings consistent with the views expressed herein.
Wright, C.J., McComb, J., Mosk, J., Sullivan, J., Clark, J., and Richardson, J., concurred.
NOTES
[1] See Article, The Identification and Division of Intangible Community Property: Slicing the Invisible Pie (1973) 6 U.C.Davis L.Rev. 26, 29-31.
[2] See, e.g., Bensing v. Bensing (1972) 25 Cal. App.3d 889 [102 Cal. Rptr. 255], in which the vested pension rights of the employee, an Air Force major, were subject to divestment if he died or was court martialed before retirement.
[3] Since it concluded that nonvested pension rights are not divisible as a community asset, the trial court did not determine what portion of Robert's pension rights is owned by the community.
[4] Gloria appealed also from the trial court's ruling that the parties' interest in the stock benefit purchase plan of General Telephone Company and all present shares owned by the parties in General Telephone Company are the separate property of Robert. Her briefs on appeal, however, do not discuss the stock benefit purchase plan or the ownership of the shares. At oral argument counsel informed us that these assets are connected to the pension program and governed by the same legal principles.

Our decision reversing the trial court judgment will permit the trial court to redetermine the ownership of the stock benefit purchase plan and the presently owned shares in accord with the views stated herein.
[5] The intermediate appellate court of the State of Washington recently reached an identical conclusion, holding that nonvested retirement benefits constitute community property under the laws of that state. (DeRevere v. DeRevere (1971) 5 Wash. App. 741 [491 P.2d 249, 251].)
[6] The cases discussing the interest of an Insurance beneficiary clarify the distinction between an expectancy and a contractual right. "The interest of a beneficiary designated by an insured who has the right to change the beneficiary is, like that of a legatee under a will, a mere expectancy of a gift at the time of the insured's death." (Grimm v. Grimm (1945) 26 Cal.2d 173, 175-176 [157 P.2d 841].) But if the holder acquires a contractual right to be named as beneficiary of the policy, his interest is no longer an expectancy, but a property right. (See Page v. Washington Mut. Life Assn. (1942) 20 Cal.2d 234, 242 [125 P.2d 20].)
[7] See, e.g., Adler v. City of Pasadena (1962) 57 Cal.2d 609, 614 [21 Cal. Rptr. 579, 371 P.2d 315]; Allen v. City of Long Beach (1955) 45 Cal.2d 128, 131 [287 P.2d 765]; Taylor v. General Tel. Co. of Cal. (1971) 20 Cal. App.3d 70, 74 [97 Cal. Rptr. 349]; West v. Hunt Foods, Inc. (1951) 101 Cal. App.2d 597, 603 [225 P.2d 978].
[8] The fact that a contractual right is contingent upon future events does not degrade that right to an expectancy. The law has long recognized that a contingent future interest is property (see Estate of Zuber (1956) 146 Cal. App.2d 584, 590 [304 P.2d 247]) no matter how improbable the contingency (see Civ. Code, § 697); an expectancy, on the other hand, "is not to be deemed an interest of any kind." (Civ. Code, § 700.)
[9] See Thiede, The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits (1975) 9 U.S.F.L.Rev. 635, 656-661; Note, Retirement Pay: A Divorce in Time Saved Mine (1973) 24 Hastings L.J. 347, 354-356.
[10] Our suggestion in Phillipson v. Board of Administration, supra, 3 Cal.3d 32, 46, that when feasible the trial court should award the employee all pension rights and compensate his spouse with other property of equal value, was not intended to tie the hands of the trial court. That court retains the discretion to divide the community assets in any fashion which complies with the provisions of Civil Code section 4800.
[11] In Benson v. City of Los Angeles (1963) 60 Cal.2d 355, 361-362 [33 Cal. Rptr. 257, 384 P.2d 649] and Packer v. Board of Retirement (1950) 35 Cal.2d 212, 217-218 [217 P.2d 660], the court expressed the fear that to recognize a nonemployee spouse's vested interest in public pension rights before such spouse was entitled to payment would hamper modification of the pension program to adapt to changing circumstances. In Allen v. City of Long Beach, supra, 45 Cal.2d 128, 131 and Abbott v. City of Los Angeles (1958) 50 Cal.2d 438, 447 [326 P.2d 484] we held that a public employee's property interest in his pension rights does not prevent the public entity from modifying those rights so long as the modification is reasonable and does not result in net disadvantage to the employee. By the same reasoning recognition of the spouse's property interest should not bar a reasonable, nondetrimental modification of the pension system.
[12] In Phillipson v. Board of Administration, supra, 3 Cal.3d 32, the employee had absconded with most of the community assets; the trial court to equalize the division of community property awarded the spouse all of the employee's pension rights. Under those special circumstances we held that since the employee no longer enjoyed a beneficial interest in the rights, the divorce court could control the employee's election between alternative benefit programs. (3 Cal.3d at p. 48.)
[13] An interlocutory decree which does not expressly reserve jurisdiction to divide property at a later date (see Civ. Code, § 4800), but instead renders a present division of property, if not challenged by appeal becomes a final and conclusive adjudication of the property rights of the parties. (See Decker v. Occidental Life Ins. Co. (1969) 70 Cal.2d 842, 848 [76 Cal. Rptr. 470, 452 P.2d 686].)
[14] Relying on the French rule, numerous decisions of this court and the Court of Appeal have stated that nonvested pension rights are not community property. (See In re Marriage of Jones, supra, 13 Cal.3d 457; Smith v. Lewis, supra, 13 Cal.3d 349; In re Marriage of Fithian, supra, 10 Cal.3d 592; Waite v. Waite, supra, 6 Cal.3d 461; Phillipson v. Board of Administration, supra, 3 Cal.3d 32; In re Marriage of Martin, supra, 50 Cal. App.3d 581; In re Marriage of Ward, supra, 50 Cal. App.3d 150; In re Marriage of Bruegl, supra, 47 Cal. App.3d 201; In re Marriage of Peterson, supra, 41 Cal. App.3d 642; In re Marriage of Brown (1972) 27 Cal. App.3d 188 [103 Cal. Rptr. 510]; Bensing v. Bensing, supra, 25 Cal. App.3d 889; In re Marriage of Karlin (1972) 24 Cal. App.3d 25 [101 Cal. Rptr. 240]; Williamson v. Williamson, supra, 203 Cal. App.2d 8.) Language in such decisions contrary to the views expressed in this opinion must be disapproved.