*In the Matter of the Marriage of* MARY L. HAGY,
*Appellant, and* RAYMOND E. HAGY,
*Respondent.*

*Quackenbush, Dean, Bailey & Henderson* and *Jack R. Dean,* for appellant.

*Woods, Riherd & Reed* and *James Reed,* for respondent.

GREEN, J.—The 21-year marriage of Mary and Raymond Hagy ended in divorce in 1970, but the divorce decree did not mention Mr. Hagy's contingent employee pension. Over

6 years later, Mrs. Hagy sued for partition of this pension. After hearing testimony the trial court dismissed her suit, and she appeals.

One issue is presented for our review: Did the trial court err when it refused to treat the parties as tenants in common in a contingent pension that was not specifically referred to in their 1970 divorce decree?

During his marriage to Mary Hagy, Mr. Hagy was an employee of Kaiser Aluminum and Chemical Corporation, and he continued to work there after the divorce. As a Kaiser employee, he was entitled to a pension contingent upon his retiring after completing 30 years of service or after attaining the age of 65 years. Mr. Hagy's rights to the pension were not vested at the time of the divorce, nor were they vested at the time of this trial.[1]

Mrs. Hagy testified that she was not aware of the pension's existence until some time after the decree of divorce was entered. However, the attorney who represented her during the divorce proceeding stated that a note was made of the existence of the pension on the interview form which was prepared when Mrs. Hagy first contacted his office. He further testified that he did not recall whether the parties discussed the pension in the negotiations which preceded the divorce, but that it was his understanding that Mr. Hagy was to receive the pension. The pension was left out of the decree because "at that time the law was such that non–vested rights [such as this pension] were not dealt with as assets and divided in a decree."

---

[1] In her brief and during oral argument, Mrs. Hagy took the position that Mr. Hagy's pension was vested. The word "vested" has several shades of meaning. For example, in *DeRevere v. DeRevere,* 5 Wn. App. 741, 743, 491 P.2d 249 (1971), the court stated that, "retirement provisions are in the nature of deferred compensation; and, as such, the employee has a *vested right in the system* which cannot be altered to his detriment . . ." However, the employee does not have an "enforceable money right unless and until the contractual terms for *payment* of accrued benefits . . . have been met." Here, Mr. Hagy has something less than a vested right to payment until he completes 30 years of service or reaches the age of 65 years.

Mrs. Hagy contends that the contingent pension was community property under the law of this state in 1970, and that it was not disposed of in the divorce decree due to an oversight of the parties. Specifically, she assigns error to the following findings of fact and conclusions of law:

### Finding of Fact No. 6

That it was not a matter of oversight that the pension was not disposed of in the decree of divorce, but rather a belief of the parties and their respective counsel that the pension was not divisible as property. That the failure by the court to dispose of the defendant's pension was in accord with case law that existed at that time.

### Finding of Fact No. 7

The law, as it existed at the time of the divorce, provided that pension benefits such as the pension involved in the instant action did not constitute property divisible by a decree of divorce.

### Finding of Fact No. 8

Both parties have materially changed their life styles in reliance upon the decree of divorce and it would be inequitable to now retroactively alter the distribution of property pursuant to that decree.

### Conclusion of Law No. 3

The court shall make such disposition of the property as shall be just and equitable. If community property is not disposed of, title vests in the parties as tenants in common. That pursuant to the present status of the law, retired pay to be received in the future constitutes something in the nature of property or property of some special type. It does not follow that a failure to make disposition of that contingency in a divorce decree creates a co–tenancy vesting of the future payments as each is received.

### Conclusion of Law No. 4

The property division portion of a divorce or dissolution decree is final, subject only to appeal and is not subject to modification, and further, that there must be some finality in divorce decrees upon which the parties can reasonably rely.

### Conclusion of Law No. 5

The failure of the court to dispose of pension benefit was in accord with the law of this state as it existed at that time and the subsequent change in the law should

be applied prospectively only in absence of any language to the contrary.

First, we find substantial evidence in the record to support the trial court's finding that the pension was not omitted from the divorce decree through oversight. Findings of fact supported by substantial evidence will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Here, the testimony of Mrs. Hagy's divorce attorney indicates that she was aware of the pension's existence because it was noted on her initial interview form. The trial judge could properly infer from this notation that the parties considered the pension in dividing their property. In the property division, Mrs. Hagy received all of the couple's property, save for Mr. Hagy's clothing and a $2,200 interest in the family home. The decree further provided that this interest would mature only when Mrs. Hagy chose to sell the home. It appears that the parties gave Mrs. Hagy special consideration in the property division to secure her future, because Mr. Hagy had his pension to rely upon.[2]

Second, we agree with the trial court that the law of this state as it existed in 1970 did not treat contingent pensions as divisible property.[3] No Washington case prior to 1970 addressed the status of *contingent* pension rights in a dissolution proceeding. It was only in cases where the

---

[2] In *In re Marriage of McKinney*, 14 Wn. App. 921, 923, 546 P.2d 456 (1976), this court held that the trial court must enter a finding concerning the allocation of pension benefits, and that evidence of the parties' intent is not sufficient to uphold the property division on appeal unless such evidence is incorporated in the findings. However, the *McKinney* holding was based on *Wilder v. Wilder*, 85 Wn.2d 364, 534 P.2d 1355 (1975); and *DeRevere v. DeRevere, supra*, which were decided after 1970. The court in the instant case did not have the benefit of these later cases in reaching its decision at the time of the dissolution. Therefore, the *McKinney* holding does not preclude the court from considering evidence of the parties' intent concerning the pension.

[3] *Langlinais v. David*, 289 So. 2d 343 (La. Ct. App. 1974), cited by Mrs. Hagy during oral argument is not applicable because *contingent* pensions were treated as divisible property under Louisiana law at the time the parties omitted reference thereto in their property settlement.

right to payment had fully matured at the time of the divorce that the status of pensions was considered. *Roach v. Roach,* 72 Wn.2d 144, 432 P.2d 579 (1967); *Morris v. Morris,* 69 Wn.2d 506, 419 P.2d 129 (1966); *Loomis v. Loomis,* 47 Wn.2d 468, 288 P.2d 235 (1955). In these cases, the nature of the matured right was variously characterized.

For example, the *Loomis* court, at page 479, noted that such pay "is not in the nature of 'future earnings,' but is an asset acquired during coverture". In *Morris,* the court, at page 510, quoted *Loomis* with approval and accorded the wife "an interest in the military pension in the . . . amount of $100 per month; that, in addition, she should be awarded $25 per month alimony for a period of 5 years, all subject to further order of the court . . ." In *Roach,* the court treated the retired pay not as property, but only as a factor bearing on the alimony award. The *Roach* court reasoned that the *Morris* language, "all subject to further order of the court," referred to both the wife's interest in the retired pay and the alimony award. Since both appeared to be subject to modification by the court, the *Roach* court, at page 147, concluded that such pay "is not a fixed asset but is an emolument or economic advantage of office." In each of these decisions, the court considered the retirement pay then being received by the husband only as it bore upon the amount of alimony to be awarded. It was never distributed as property.

Thus, in 1972, the Court of Appeals relied on *Roach* in deciding that a contingent pension did not represent divisible property. *Payne v. Payne,* 7 Wn. App. 338, 498 P.2d 882 (1972). The Supreme Court reversed the Court of Appeals, in effect overruling *Roach,* and held that *Roach* incorrectly construed *Morris, Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973). In so doing, the court reasoned that the phrase "all subject to" in *Morris* only referred to the immediately preceding language regarding alimony and did not refer to that portion of the award granting the wife a $100 per month interest in the pension. Regardless, the court concluded that the statement in *Roach* that a military pension

is not a fixed asset did not preclude the court from treating certain aspects of the pension as property. *See also Wilder v. Wilder, supra; DeRevere v. DeRevere, supra;* and Comment, *Community Property—Deferred Compensation: Disposition of Military Retired Pay Upon Dissolution of Marriage,* 50 Wash. L. Rev. 505 (1975).

The interpretation in *Payne* and *Wilder* of the earlier cases would have been hard to predict in 1970. In 1967, the *Roach* opinion had interpreted the prior law as treating vested pension rights as "emoluments of office." It was not until 1973, 3 years after the divorce in the present case, that the Supreme Court labeled the *Roach* reasoning incorrect.[4] The trial court properly concluded that the failure to specifically mention and dispose of the contingent pension in the divorce decree was consistent with the state of the law as it existed in 1970.

To give retroactive effect to the decisions in the post–1970 cases so as to allow the maintenance of a partition suit would work an injustice. There are undoubtedly a multitude of cases, finalized prior to the *Payne* decision, in which the parties failed to list contingent pension rights among the community assets. As the trial judge noted in his opinion, "Parties have remarried, new families have been created in reliance on those decrees."[5] Moreover, the unexpressed contingent pension rights were undoubtedly considered in the final disposition of their property. These factors, coupled with the difficulty of foreseeing in 1970 the coming developments in the law,[6] support our view that

---

[4]The authors of the *Washington Community Property Desk Book* § 14.9, at 14–11 (1977), state: "The Washington court has *now* accepted the concept that the interest in a deferred compensation plan is property even though that interest is contingent." (Italics ours.) (Citing *DeRevere v. DeRevere, supra;* and *Wilder v. Wilder, supra.*) These writers seem to infer that prior to *DeRevere* and *Wilder* decisions, contingent pensions were treated as mere expectancies and were not subject to division upon divorce.

[5]We note that retroactive application would not be limited by any statute of limitations, since a spouse's right of partition is not so limited.

[6]This difficulty is apparent from the Court of Appeals decision in *Payne v.*

*Payne* and its progeny should not be utilized as a wedge to reopen prior decrees entered in good faith according to then existing law.[7]

Affirmed.

McINTURFF and WILLIAMS, JJ., concur.

*Payne,* 7 Wn. App. 338, 498 P.2d 882 (1972), *review granted,* 82 Wn.2d 573 (1973).

[7]California utilized similar reasoning in reaching this same conclusion in *In re Marriage of Brown,* 15 Cal. 3d 838, 544 P.2d 561, 126 Cal. Rptr. 633 (1976).