[No. G006606. Fourth Dist., Div. Three. Dec. 13, 1989.]

In re the Marriage of DEANNA and WILLIAM WALKER.
DEANNA WALKER, Respondent, v.
WILLIAM WALKER, Appellant.

646

COUNSEL

William F. Walker, in pro. per., for Appellant.

Marjorie G. Fuller for Respondent.

OPINION

SONENSHINE, J.—William Walker (Bill) appeals portions of the interlocutory judgment dissolving his marriage to Deanna. He claims the trial court erred in both characterizing and valuing the employer-granted stock options. He is correct.

I

Deanna and Bill separated October 27, 1985, after an 18-year marriage. On August 22, 1983, Bill began a new job with Caremark. During his employment, and before separation, he was granted several company stock options, all at the stock's then market value. The date of exercisability as to each option varied. The stock, subject to terms of forfeiture, vested on various dates.[1]

---

[1] The date of exercisability of the option is the date the stock can be purchased. The vesting date is the date the stock purchased pursuant to the option can be received. An option may be exercised, but the stock still subject to forfeiture if the employee is terminated prior to its vesting.

At trial, Bill argued the stock options and/or the gain on the stock should be valued as of the date of the parties' separation. He maintained the community should have an interest only to the extent an option had "inevitably vested" as of the date of separation.

On August 3, 1987, Caremark was sold to Baxter, Inc. As a result, the options' dates of exercisability were accelerated and all of the stock immediately vested.

At time of trial, Bill had sold some of the stock received pursuant to the exercise of certain of the options, realizing a pretax gain of $255,388. Moreover, Bill had exercised options yielding 15,123 shares of Baxter stock. An additional 60,000 options had not yet been exercised.[2]

The court found all of the gain on the stock sold after separation was community property. It ordered Bill to pay his wife one-half of that amount after credit for state and federal taxes. It determined the 15,123 options exercised after separation were also community property and ordered Bill to assign one-half to Deanna. Of the 60,000 unexercised options, 46,761 were found to be community property. Bill was ordered to exercise one-half of the 46,761 options immediately upon the condition that Deanna instruct him to do so no later than December 1, 1987. Upon Deanna's payment to Bill of the cost of the option, Bill was to deliver her stock to her.

## II

Three California appellate court decisions have addressed the issue of the appropriate method of allocating community and separate property interests in employer stock options granted prior to separation but exercisable thereafter. ■ ▇▇▇▇▇ All utilized a time rule determining the community property interest in the stock option according to the relationship between events occurring pre- and postseparation.[3]

In *In re Marriage of Hug* (1984) 154 Cal.App.3d 780 [201 Cal.Rptr. 676, 46 A.L.R.4th 623], the court found "the number of options determined to

---

[2] Prior to the Baxter merger, Caremark stock split three for two. As a result of the merger, Caremark stock was converted to Baxter stock at a .871053 conversion rate.

[3] Underlying all of Bill's complaints is his dissatisfaction with the time rule. This issue has been considered by other courts and resolved adversely to Bill. " '. . . [E]ach spouse's time, skill, and labor are community assets, and whatever each spouse earns from them during marriage is community property.' [Citation.] After separation earnings and accumulations of a spouse are separate property. [Citation.] Fringe benefits are not a gift from the employer but are earned by the employee as part of the compensation for services. [Citations.] Thus fringe benefits such as . . . employee stock options are community property to the extent they are earned by the time, skill and effort of a spouse during marriage. [Citations.] Fringe benefits consisting of contractual rights to future benefits after separation, though unvested and unmatured, are property subject to allocation between community and separate interests at the time of dissolution. [Citation.]" (*In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1226 [225 Cal.Rptr. 234].)

Bill contests the trial court's finding the options were "fringe benefits and were granted as compensation for services rendered and as compensation for services to be rendered." Deanna and Bill both testified concerning this issue as did the company president. Substantial evidence supports the trial court's conclusion.

be community property is a product of a fraction in which the numerator is the period in months between the commencement of the spouse's employment by the employer and the date of separation of the parties, and the denominator is the period in months between commencement of employment and the date when each option is first exercisable, multiplied by the number of shares which can be purchased on the date the option is first exercisable. The remaining options are the separate property of the employee." (*Id.*, at pp. 782-783.)[4]

In *In re Marriage of Nelson* (1986) 177 Cal.App.3d 150 [222 Cal.Rptr. 790], the court observed the "*Hug* options appear to have been designed to attract new employees and/or more generously reward past services. [Citation.] [Here] . . . only prospective increases in the value of [the] stock could result in a profit to the [employee] option holders. [The court] therefore [determined it was] appropriate to place more emphasis on the period following each grant to the date of separation . . . than on the employee's entire tenure with the company up to the time of separation . . . ." (*Id.*, at p. 155, fn. 4.)

As a result, the *Nelson* court approved "a formula in which the numerator was the number of months from the date of grant of each block of options to the date of the couple's separation, while the denominator was the period from the time of each grant to its date of exercisability." (*Id.*, at p. 155.)[5]

In *In re Marriage of Harrison, supra,* 179 Cal.App.3d 1216, the court recognized that a formula utilized to determine the separate and community property aspects of employer-granted stock options must distinguish between "qualified and nonqualified options as well as the differences between the options themselves and stock purchased pursuant to the options." (*Id.*, at p. 1224.)

---

[4] Diagrammed, the equation is as follows:

$$\frac{\text{Months Between Date of Separation and Date of Employment}}{\text{Months Between When Each Option Was First Exercisable and Date of Employment}} \times \begin{array}{l}\text{Number of shares} \\ \text{which can be} \\ \text{purchased on the} \\ \text{date the option is} \\ \text{first exercisable}\end{array} = \begin{array}{l}\text{Number of} \\ \text{options} \\ \text{determined to} \\ \text{be community} \\ \text{property}\end{array}$$

[5] Diagrammed, the *Nelson* formula is:

$$\frac{\text{Number of Months Between Date of Separation and Date of Grant}}{\text{Number of Months Between When Each Option Is First Exercisable and Date of Grant}} \times \begin{array}{l}\text{Number of shares} \\ \text{which can be} \\ \text{purchased on the} \\ \text{date the option is} \\ \text{first exercisable}\end{array} = \begin{array}{l}\text{Number of} \\ \text{options} \\ \text{determined to} \\ \text{be community} \\ \text{property}\end{array}$$

It found the appropriate method of determining the community property interest was to create a fraction, the numerator of which is the total number of days between the signing or granting of the option agreement and the date of separation and the denominator of which is the total number of days between the signing or granting of the option agreement and the day on which each portion of the stock received pursuant to the exercise of the option became fully vested and not subject to divestment. This fraction is then multiplied by the gain on the stock option on the date of exercise. (179 Cal.App.3d at pp. 1223-1225.)[6]

■ As recognized in *Hug*, "no single rule or formula is applicable to every dissolution case involving employee stock options. Trial courts should be vested with broad discretion to fashion approaches which will achieve the most equitable results under the facts of each case." (*In re Marriage of Hug, supra*, 154 Cal.App.3d 780, 792.)

■ Here, however, the trial court abused its discretion in failing to apply the *Harrison* formula. *It relied on the dates the options were exercisable rather than the dates the stocks became vested.*[7] Indeed, the trial court found the latter consideration was irrelevant. The court's statement of decision provides, "whether or not the option rights were vested at the date of separation is of no value to the court because the option rights represented a community property asset subject to division. The amount of the benefits received by Respondent/husband by way of the stock options substantially related to Respondent/husband's length of employment. [¶] [T]he exercise of the options did not change the character of the asset since the stock received by Respondent/husband was community property to the same extent as the stock option was community property. [¶] It is not relevant if before the dates [the options could be exercised and/or the stocks be nonforfeitable] Respondent was terminated for any reason by the employ-

---

[6] The *Harrison* court determined husband was to be reimbursed for the purchase price of the option. Tax considerations were also considered.

Diagrammed, the *Harrison* equation is as follows:

$$\frac{\text{Number of Days Between the Date of Separation and Date of Grant}}{\substack{\text{Number of Days Between Date of}\\\text{Grant and Date on which each}\\\text{Portion of the Stock Received}\\\text{Pursuant to the Exercise of the}\\\text{Option Became Fully Vested and}\\\text{not Subject to Divestment.}}} \times \substack{\text{Gain on stock option}\\\text{on Date of Exercise}} = \substack{\text{Community}\\\text{Property Int.}\\\text{(Subject to}\\\text{reimbursement}\\\text{for purchase of}\\\text{option and any}\\\text{taxes paid.)}}$$

[7] The trial court found the *Nelson* formula was the appropriate one to determine the community property interest in the options and stock. We have no quarrel with the court's choice of the date of grant rather than the employment commencement date and neither party complains about this.

er/grantor since Respondent was not terminated and since the vesting on all of the shares of stock became irrevocably vested as of August 3, 1987 and the company waived their repurchase rights."

Considerations of exercisability of the options and vesting of the stocks are, however, extremely significant. As discussed above, *Harrison* recognized the distinction between the ability to exercise an option and the ability to purchase the stock received pursuant to the exercise of the option.[8] To ignore this difference is to misconstrue the entire time rule concept. The community has an interest in employment benefits *conferred* during marriage. In *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], our Supreme Court acknowledged the community does not lose its interest in those benefits simply because they are *received* after separation. Conversely, however, when the parties separate before the benefits are vested, the community does not *receive* all of them. There must be an allocation taking into account the periods of time before and after separation.

Here, the benefits include not only the right to exercise the options[9] but also, as in *Harrison,* the right to receive and own the stock without being subject to divestment. The trial court's reliance on only the date of exercisability results in mathematical and legal impossibilities. "Because [some of] the option[s] . . . fully vest[ed] at the time of [their] grant, a literal application of [the trial court's] formula results in a denominator of one. With a denominator of one the ratio defining the community interest exceeds 100 percent—a non sequitur in the context of community property." (*In re Marriage of Harrison, supra,* 179 Cal.App.3d 1216, 1225.) Thus, the community got more than that to which it was entitled. It shared in portions of the options and/or stock that were, in effect, *earned after* separation. This violates the mandates of Civil Code section 5118.

The trial court found "the gain realized by [Bill] from the community property shares sold prior to October 8, 1987 by [him] was $252,388.00. That [his] California Tax Liability was $12,061.00, that [his] Federal Tax liability was $28,566.00 and that the net after tax amount received by Respondent was $211,761.00."

Bill complains the trial court erred in calculating the tax liabilities. He maintains the correct figure is much higher. However, a review of the record indicates substantial evidence supports these findings.

[8] *Hug* and *Nelson* discuss only the date of exercisability.

[9] *Harrison* realized "[o]ptions to buy or sell listed stock, puts, and calls, are regularly traded on listed exchanges." (*In re Marriage of Harrison, supra,* 179 Cal.App.3d 1216, 1225, fn. 2.) However, here as in *Harrison,* the statement of decision does not disclose the value (if any) of the vested options.

We need not remand this to the trial court for further evidence or hearing. The trial court relied on Deanna's expert's calculations in making its determination. We have reviewed those and conclude the *Harrison* calculations as testified to by Mr. Hughes can simply be substituted in place of the *Nelson* figures.[10] Accordingly, the judgment is modified to read as follows. Of the 15,123 shares of Baxter options exercised after separation, 11,532 are community property. Bill is ordered to assign one-half of that amount, or 5,766, to Deanna. Of the 60,000 options not yet exercised, 28,308 are community property. ■ ■ ■■ ■■ Deanna is entitled to one-half, or 14,154, upon payment to Bill of the cost of each option.[11]

---

[10]Specifically, we refer to exhibit 31, reproduced in the appendix. The changes to the judgment will be as follows:

| | |
|---|---|
| Option #1: | 3,252 shares of the stock are community property rather than 6,000 as the court found. |
| Option #2: | 6,875 of the 7,500 shares of stock are community property rather than the 7,500 as the court found. |
| Option #3: | No change because the dates of exercisability of the options and the dates of vesting of the stock are the same. |
| Options #4 & 5: | 27,569 of the options are community property rather than 41,693. |

We note the expert, in determining the stocks' vesting date, correctly relied on the date the stock actually vested. If the vesting date was accelerated because of the merger, the merger date was utilized.

[11]We have focused on two aspects of the equation: the date of exercisability of the option and the date of vesting of the stock. One other element merits comment, and that is that to which the formula is to be applied.

*Hug* and *Nelson* applied the formula to the number of shares which could be purchased on the date the option is first exercisable. *Harrison* multiplied the fraction by the gain on the stock option on date of exercise. Both methods are correct. Indeed, the fraction should be multiplied by the *asset* to be divided.

There are several possible scenarios. Three are present here. If, at time of trial, the option has been exercised and the stock was sold, the "asset" is the difference between the option price and the sales price. If the option has been exercised, but the stock has not been sold, the trial court has the discretion of doing one of two things. It can compute the community property interest in the exercised options and order the stock divided accordingly. The court could also order the spouse to whom the options were granted to "buy out" the other spouse by paying the other spouse the difference between the value of the stock on the date of trial and the option price. The third scenario present here is to determine the community property interest in the unexercised options. The court correctly applied the formula determining the community interest in those unexercised options and then ordering Bill to deliver one-half of the community interest share to Deanna.

Bill asked the trial court to value the community interest in the options and stock at the date of separation. The trial court was correct in denying this request. First of all, it was untimely. (Civ. Code, § 4800, subd. (a).) More important, it is irrelevant. As discussed above, it is the community property interest in the asset which must be defined. The asset can be either the *number of* options, the *amount* of stock or the actual gain on either or both. The only time the *date* of valuation would be a factor is when the court determines a buy out of the community property interest is appropriate. And then Civil Code section 4800, subdivision (a) is controlling. As *Hug* recognized, Bill's "claim[s] of reversible error by the trial court's failure to fix the value of the option rights as of the date of separation seems confused in light of *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]." (*In re Marriage of Hug, supra,* 154 Cal.App.3d 780, 789.)

### III

■    Without any reference to the clerk's or reporter's transcripts, to any evidence, or to any statutory case authority, Bill complains the trial court erred in ordering him to pay $1,800 towards Deanna's accountant's fees and $4,350 owed to Judicial Arbitration Service.

He maintains the accountant fees "are appealed [because] his schedules were knowingly prepared as false and misleading." He suggests "although [the accountant] was submitted as an 'expert' this was never challenged, nor do we know what his expertise is." He complains the outside judicial service was never used because it increased its hourly rate after a deposit had been paid. Moreover, its bill, he insists, is hearsay.

In other words, Bill would like us to retry the case based on evidence which may or may not have been before the trial court. This we may not do.

"An appellate court is not required to search the record to determine whether or not the record supports appellant['s] claim of error. It is the duty of [the party] to refer the reviewing court to the portions of the record which support appellant['s] position. [Citations.]" (*Green* v. *City of Los Angeles* (1974) 40 Cal.App.3d 819, 835 [115 Cal.Rptr. 685].)

Moreover, an award of costs in a dissolution proceeding is left to the sound discretion of the trial court and will not be overturned without substantial evidence of its abuse. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58].)

Judgment affirmed as modified. Each side shall bear its own costs.

Scoville, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied January 12, 1990, and appellant's petition for review by the Supreme Court was denied March 15, 1990.

APPENDIX

EXHIBIT 31

OPTIONS EXERCISED

| SHARES SOLD | HARRISON |
|---|---|
| GAIN | 252,388 |
| LOSS:   CALIFORNIA TAX | 12,061 |
| FEDERAL TAX | 28,566 |
| NET | 211,761 |

EXERCISED, UNSOLD AND ON-HAND SHARES

| # CAREMARK | 8,827 |
|---|---|
| EFFECT OF SPLIT 3/2 (x 1.5) | 13,241 |
| EFFECT OF BAXTER (x .871) | 11,532 |

COMMUNITY OPTIONS NOT YET EXERCISED

| # CAREMARK | 21,667 |
|---|---|
| EFFECT OF SPLIT 3/2 (x 1.5) | 32,501 |
| EFFECT OF BAXTER (x .871) | 28,308 |

ASSUMPTIONS

EMPLOYMENT DATE 8/83
EMPLOYMENT TO DATE OF SEPARATION = 26 MONTHS
DATE OF SEPARATION 10/85

OPTION #1:

GRANT DATE: 8/83
1st EXERCISABLE: 8/83
VESTING: 8/12/87, advanced to 7/87
6,000 shares @ $3.67
EXERCISED: 1/86 for $22,020
UNEXERCISED SHARES: NONE

HARRISON   (26/48)

$$\frac{\text{GRANT TO DATE OF SEPARATION}}{\text{GRANT TO VESTING}}$$

OPTION #2:

GRANT DATE: 1/84

| | | | |
|---|---|---|---|
| 1st EXERCISABLE: | 2,500 | shares | 1/85 |
| | 5,000 | shares | 1/86 |
| VESTING: | 2,500 | shares | 1/85 |
| | 5,000 | shares | 1/86 |

7,500 shares @ $7.00
EXERCISED: 1/86 for $52,500
UNEXERCISED SHARES: NONE

HARRISON

21/12 x 2,500
21/24 x 5,000

**OPTION #3:**

GRANT DATE: 8/84
1st EXERCISABLE: 2/85 for 6/48
    monthly thereafter for 1/48/mo.
VESTING: 2/85 for 6/48
    monthly thereafter for 1/48/mo.
13,309 shares @ $6.50
EXERCISED: 4,700 shares 1/86 for $30,550
UNEXERCISED SHARES: 8,609

HARRISON

| | | | |
|---|---|---|---|
| | 14/7 | x | 277 |
| | 14/8 | x | 277 |
| | 14/9 | x | 277 |
| | 14/10 | x | 277 |
| | 14/11 | x | 277 |
| | 14/12 | x | 277 |
| | 14/13 | x | 277 |
| | 14/14 | x | 277 |
| | 14/15 | x | 277 |
| 12/85 | 14/16 | x | 277 |
| | 14/17 | x | 277 |
| | 14/18 | x | 277 |
| | 14/19 | x | 277 |
| | 14/20 | x | 277 |
| | 14/21 | x | 277 |
| | 14/22 | x | 277 |
| | 14/23 | x | 277 |
| | 14/24 | x | 277 |
| | 14/25 | x | 277 |
| | 14/26 | x | 277 |
| | 14/27 | x | 277 |
| 12/86 | 14/28 | x | 277 |
| | 14/29 | x | 277 |
| | 14/30 | x | 277 |
| | 14/31 | x | 277 |
| | 14/32 | x | 277 |
| | 14/33 | x | 277 |
| | 14/34 | x | 277 |
| | 14/35 | x | 3,889 |

OPTIONS #4 & #5:

GRANT: 8/84
1st EXERCISABLE: 10/84
VESTING: 2/85 for 6/48
    monthly thereafter for 1/48/mo.
41,693 shares @ $6.50
EXERCISED: 10,000 1/86 for $65,000
UNEXERCISED: 31,693 shares

| HARRISON: | | 14/6 | x | (6/48 x 41,693) = 5,212 |
|---|---|---|---|---|
| | | 14/7 | x | (1/48 x 41,693) = 869 |
| | | 14/8 | x | 869 |
| | | 14/9 | x | 869 |
| | | 14/10 | x | 869 |
| | | 14/11 | x | 869 |
| | | 14/12 | x | 869 |
| | | 14/13 | x | 869 |
| | | 14/14 | x | 869 |
| | | 14/15 | x | 869 |
| | 12/85 | 14/16 | x | 869 |
| | | 14/17 | x | 869 |
| | | 14/18 | x | 869 |
| | | 14/19 | x | 869 |
| | | 14/20 | x | 869 |
| | | 14/21 | x | 869 |
| | | 14/22 | x | 869 |
| | | 14/23 | x | 869 |
| | | 14/24 | x | 869 |
| | | 14/25 | x | 869 |
| | | 14/26 | x | 869 |
| | | 14/27 | x | 869 |
| | 12/86 | 14/28 | x | 869 |
| | | 14/29 | x | 869 |
| | | 14/30 | x | 869 |
| | | 14/31 | x | 869 |
| | | 14/32 | x | 869 |
| | | 14/33 | x | 869 |
| | | 14/34 | x | 869 |
| | 7/87 | 14/35 | x | 12,149 |

## PERCENTAGE COMMUNITY

<u>OPTION #1:</u>

<u>HARRISON</u>

26/48 x 6,000 = 3,252 shares community

<u>OPTION #2:</u>

<u>HARRISON</u>

21/12 x 2,500 = 2,500 shares community
21/24 x 5,000 = 4,375 shares community
                6,875 shares community

<u>OPTION #3:</u>

<u>HARRISON</u>

14/14 x 3,880 = 3,880 shares community
14/15 x   277 =   259
14/16 x   277 =   242
14/17 x   277 =   228
14/18 x   277 =   215
14/19 x   277 =   204
14/20 x   277 =   194
14/21 x   277 =   185
14/22 x   277 =   176
14/23 x   277 =   169
14/24 x   277 =   162
14/25 x   277 =   155
14/26 x   277 =   149
14/27 x   277 =   144
14/28 x   277 =   139
14/29 x   277 =   134
14/30 x   277 =   129
14/31 x   277 =   125
14/32 x   277 =   121
14/33 x   277 =   118
14/34 x   277 =   114
14/35 x 3,889 = 1,556
                8,778 shares community

OPTIONS #4 & #5:

HARRISON THROUGH 10/85

| | | | | |
|---|---|---|---|---|
| 14/14 | x | 12,164 | = | 12,164 |
| 14/15 | x | 869 | = | 811 |
| 14/16 | x | 869 | = | 760 |
| 14/17 | x | 869 | = | 716 |
| 14/18 | x | 869 | = | 676 |
| 14/19 | x | 869 | = | 640 |
| 14/20 | x | 869 | = | 608 |
| 14/21 | x | 869 | = | 579 |
| 14/22 | x | 869 | = | 553 |
| 14/23 | x | 869 | = | 529 |
| 14/24 | x | 869 | = | 507 |
| 14/25 | x | 869 | = | 487 |
| 14/26 | x | 869 | = | 468 |
| 14/27 | x | 869 | = | 451 |
| 14/28 | x | 869 | = | 435 |
| 14/29 | x | 869 | = | 420 |
| 14/30 | x | 869 | = | 406 |
| 14/31 | x | 869 | = | 392 |
| 14/32 | x | 869 | = | 380 |
| 14/33 | x | 869 | = | 369 |
| 14/34 | x | 869 | = | 358 |
| 14/35 | x | 12,149 | = | 4,860 |

27,569 shares community