Filed 8/8/13  Marriage of Plunkett CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of CHRISTA and CHAD PLUNKETT. | |
| | D062540 |
| CHRISTA PLUNKETT, | |
| Respondent, | (Super. Ct. No. ED74842 ) |
| v. | |
| CHAD PLUNKETT, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, William C. Gentry, Judge.  Affirmed.

Patrick L. McCrary for Appellant.

John J. McCabe, Jr., for Respondent.

This dissolution action between Christa Plunkett and Chad Plunkett went to a court trial wherein Christa[1] asserted that Chad secretly withdrew over $231,000 in community funds just before their separation.  Following the court trial, of relevance to this appeal, the court, in its statement of decision, (1) ordered Chad to pay $50,000 in attorney fees to Christa; (2) charged Chad with a preliminary distribution of community funds in the sum of $181,951 that he secretly removed from various accounts; (3) reserved jurisdiction over child and spousal support; and (4) ordered division of Christa's IRA account pursuant to *In re Marriage of Brown* (1976) 15 Cal.3d 838 (*Brown*). Thereafter, when the court entered judgment, it set child support at $0.

On appeal, Chad asserts that the court (1) failed to make appropriate findings in its award to Christa of attorney fees based upon her need and his ability to pay; (2) erred in not granting attorney fees to him based upon his need and ability to pay; (3) erred in charging him with a preliminary distribution of community funds; (4) erred in not giving him credit for living expenses he paid from those funds; (5) erroneously failed to make findings and orders concerning child and spousal support; and (6) erred in ordering Christa's IRA account divided under the *Brown* rule.  We affirm.

---

[1]     As is the custom in family law proceedings, and in the interest of clarity, we refer to the parties by their first names.  (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 390, fn. 1.)  We intend no disrespect.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Marriage and Dissolution*

The parties were married in 1992 and separated in July 2009. Chad and Christa had two children of the marriage.

Christa's mother died in February 2008, and Christa inherited the house where the family had resided with her mother prior to her death.

Chad and Christa owned an unimproved lot on Sage Road in El Cajon (Sage Road property), a home on La Cresta Boulevard in El Cajon (La Cresta property) and a home on Scottford Drive in El Cajon (Scottford property).

The value of the Sage road property was $115,000, with no encumbrances. The La Cresta property had a value of $430,000, with total encumbrances of $322,654. The Scottford property had a value of $360,000, with total encumbrances of $437,375.

During the marriage Christa worked as a hair stylist and Chad's work primarily involved maintaining, improving and managing the real property owned by the parties.

Chad and Christa had several equity lines of credit prior to separation, secured by their real property. In the months preceding separation, Chad drew $231,399 from those lines of credit. A substantial portion of these funds were deposited in a bank account in the name of Chad's father. Several postseparation expenses totaling $20,110 were made from that fund.

The parties had three vehicles: a 1999 Dodge Durango valued at $2,000, a 2009 Toyota Corolla purchased by Chad postseparation with community funds, and a 2004 Ford F-150 with a value of $2,400.

3

B. *Trial and Court's Decision*

This matter was tried over five days in April, June, August and September 2001. The issues outstanding at the time of trial were (1) the four parcels of real property and their associated debt; (2) community funds withdrawn from the lines of credit; (3) the disposition of funds from the sale of the Dodge Durango; (4) division of Christa's IRA; (5) which party would manage the children's bank accounts; (6) allocation of community credit card debts; (7) disposition of the 2009 Toyota Corolla and the 2004 Ford F-150; (8) child support; (9) spousal support; (10) damages, if any, due to Christa for Chad's breach of fiduciary duty; and (11) attorney fees and costs.

In her trial brief Christa alleged Chad was responsible for secretly withdrawing $231,399 from the equity lines of credit shortly before the parties' separation. Christa testified she was not aware Chad had withdrawn the funds until a year following the parties' separation. Christa further testified she did not agree to the withdrawals. Chad admitted at trial that he did not disclose evidence of the withdrawals in bank documents contained in his discovery responses produced three months after the inception of this proceeding. Christa asserted she had no knowledge of Chad's control of these funds until he prepared and served his preliminary declaration of disclosure one year later, in July 2009.

Chad testified he provided an accounting of the funds at the mandatory settlement conference. However, Christa testified she never saw such an accounting until several days before the trial.

4

Following trial, the court issued a statement of decision. Of relevance to this appeal, with regard to Chad's withdrawals from the lines of credit the court found that $181,951 be characterized as a predistribution of community property assets. In doing so, the court stated as follows: "The Court is suspicious of the motivations surrounding such large draws upon virtually every line of credit the couple had in place without consultation with Christa in such a short period of time. While the parties had used equity lines of credit in the past, the fact that the funds were deposited into an account to which Christa did not have access is disturbing." The court ordered Christa's IRA account "divided pursuant to the holding of *In Re Marriage of Brown*." The court found that Christa earned approximately $2,600 per month from her job as a hair stylist. The court did not state the amount that Chad could earn, but found that Chad had "the ability to undertake general labor and service industry jobs, recognizing he may have some physical limitations." The court reserved jurisdiction over child and spousal support. The court awarded Christa $50,000 in attorney fees and costs, but did not indicate whether it was based upon the parties' needs and ability to pay or as a sanction based upon Chad's conduct. Neither party filed any objections to the statement of decision. Thereafter, when the court entered judgment, it set child support at $0.

## DISCUSSION

### I. *AWARD OF ATTORNEY FEES*

Chad first asserts the court erred in awarding Christa attorney fees in the amount of $50,000 without first making adequate findings on Christa's need and Chad's ability to

pay. Chad further asserts that the court erred in not awarding fees to *him* based upon his need and Christa's ability to pay. These contentions are unavailing.

With respect to an award of need-based attorney fees, Family Code[2] section 2030, subdivision (a)(2) provides: "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."

Section 2032 further provides: "(a) The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one

---

[2] All further undesignated statutory references are to the Family Code.

6

factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

Further, section 271 provides for an award of attorney fees as a sanction for unreasonable conduct: "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award."

The statement of decision does not state whether the attorney fee award to Christa in the amount of $50,000 was based upon her need or as a sanction based upon Chad's conduct. However, the record reflects that the court had an adequate basis to either award fees to Christa based upon need, or as a sanction against Chad. As to need-based fees, the court found that Christa made $2,600 a month as a hairstylist and that Chad had the ability to earn money consistent with "general labor and service industry jobs." The court further attributed $181,951 in withdrawn funds to Chad as a preliminary distribution of community assets, further evidencing an ability to pay.

7

Moreover, there was ample evidence from which the court could base an award of attorney fees under section 271, which does not necessitate a showing of need by the requesting party. The trial in this matter centered in large part on Chad's withdrawal of over $231,000 from the couple's equity lines of credit without notice to, or permission from, Christa. In its statement of decision, the court found these actions "suspicious" and "disturbing." These findings amply support the court's imposition of attorney fees under section 271 and a denial of fees to Chad.

## II. *CHARGE OF $181,951 AGAINST CHAD*

Chad next asserts that the court erred in charging him with $181,951 to be characterized as a predistribution of community property assets. We reject this contention.

As the Court of Appeal stated in *In re Marriage of Prentis-Margulis &Margulis* (2011) 198 Cal.App.4th 1252, 1269 (*Margulis*): "Family Code provisions detailing the fiduciary obligations between spouses provide strong support for shifting the burden of proof to the managing spouse when determining the value and disposition of missing assets. The starting point is section 721, which provides that accountability for the management of community assets is a fundamental aspect of the fiduciary duties owed between spouses. [¶] Section 721, subdivision (b), states, in relevant part: '[I]n transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair

8

advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following: [¶] (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying. [¶] (2) Rendering upon request, true and full information of all things affecting any transaction which concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions. [¶] (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse which concerns community property.'"

In addition, "[c]onsistent with these fiduciary obligations, section 2100, subdivision (c) provides that 'a full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest must be made in the early stages of a proceeding for dissolution of marriage or legal separation of the parties, regardless of the characterization as community or separate, together with a disclosure of all income and expenses of the parties.'" (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1476.)

The Court of Appeal in *Margulis* further stated that: "Taken together, these Family Code provisions impose on a managing spouse affirmative, wide-ranging duties to disclose and account for the *existence, valuation,* and *disposition* of all community assets from the date of separation through final property division. These statutes obligate a managing spouse to disclose soon after separation all the property that belongs or might

9

belong to the community, and its value, and then to account for the management of that property, revealing any material changes in the community estate, such as the transfer or loss of assets. This strict transparency both discourages unfair dealing and empowers the nonmanaging spouse to remedy any breach of fiduciary duty by giving that spouse the 'information concerning the [community's] business' needed for the exercise of his or her rights [citations], including the right to pursue a claim for 'impairment to' his or her interest in the community estate [citation]." (*Margulis, supra,* 198 Cal.App.4th at pp. 1270–1271.)

The court did not err in charging Chad with preseparation assets. It is undisputed that Chad withdrew over $231,000 from the parties' equity lines of credit within three months prior to the separation in July 2008. During trial, Chad identified the specific withdrawals from the lines of credit during those three months. In his preliminary declaration of disclosure, Chad acknowledged there was $186,000 remaining from his withdrawal from one line of credit. The evidence of Chad's secret withdrawals was detailed in the statement of decision in support of its finding that Chad would be charged with a preliminary distribution of community funds removed from the various accounts in the sum of $181,951.

### III. *LIVING EXPENSES*

Chad asserts he should be given a *credit* for his use of the preseparation withdrawn funds for his living expenses. This contention is unavailing.

Chad admitted at trial that at an early hearing in this proceeding, his counsel told the court that Chad should be permitted to remain in the La Cresta residence because he

had the ability to maintain the residence, either alone or with the help of his parents. However, for the first time at trial, Chad then testified his attorney was misinformed and incorrect when he made that representation.

During the pendency of this proceeding, Chad filed three income and expense declarations. A review of these declarations reveals that at no time did Chad disclose he was utilizing funds to live on that he secretly withdrew from community accounts. Chad cannot now assert that, having withdrawn community funds and secretly applied them for his personal benefit before separation, such funds should be deducted from the total funds he concealed and misused. The evidence reflects, as the court found in its statement of decision, Chad hid them in his father's account and then used them as he chose after separation. Chad cannot profit from his own wrongdoing.

## IV. *CHILD AND SPOUSAL SUPPORT*

Chad asserts that the court erred by making only "minimal findings" in reserving jurisdiction over child and spousal support in its statement of decision, and thereafter in the final judgment, reducing child support to $0. We reject this contention.

First, Chad never objected to the statement of decision, although authorized to do so under California Rules of Court, rule 3.1590(g). He has therefore forfeited any contention the court's findings were inadequate. (*Atari, Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674-675.)

Moreover, there is substantial evidence in the record to support the court's decision. At trial, the court had before it both Chad's and Christa's income and expense declarations. Both declarations set forth, in detail, the nature and extent of each party's

11

income and respective financial need. In the statement of decision, the court detailed the work history of the parties, including Chad's college history and prior work as an accountant. The court also noted in its statement of decision that Chad had the skills and ability to secure employment. Thus, there is substantial evidence in the record to support the court's decision concerning child and spousal support.

## V. *DIVISION OF CHRISTA'S IRA ACCOUNT*

Chad asserts that the court erred in ordering the division of Christa's IRA account in accordance with *Brown, supra,* 15 Cal.3d 838. He argues that the "time rule" enunciated in *Brown,* which applies to pension benefits that are based on the number of years of employment, is inapplicable because there is no evidence that Christa's IRA was related to her employment. This contention is unavailing.

Contrary to Chad's contention, "*Brown* did not either establish or promote the use of the time rule, or any other specific formula, as a method for the ultimate pension division on the court's exercise of its retained jurisdiction." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 519.) The *Gray* court explained that the reference to the *Brown* formula in the parties' judgment in that case was reasonably interpreted as only an indication that at the time of the parties' judgment the court had determined the community had in interest in the husband's pension and had directed that community interest would be divided "in kind" in the future exercise of its discretion. (*Id.* at p. 509.)

Likewise, in this case the community had an interest in Christa's IRA. That interest needs to be divided, but not pursuant to any time rule. Rather, the interest must

12

be divided based upon the nature and extent of community and separate property contributions.

DISPOSITION

The judgment is affirmed.


NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.